IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CATHRINE BARTELS,

                    Plaintiff,

          v.                                        5:08-CV-1102 (GLS/DEP)

MICHAEL J. ASTRUE,[1] Commissioner
of the Social Security Administration,

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

MCMAHON, KUBLICK & SMITH, P.C.   JENNIFER GALE SMITH, ESQ.
500 South Salina Street
Syracuse, New York 13202

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN          DENNIS J. CANNING, ESQ.
United States Attorney             Special Assistant U.S. Attorney
Northern District of New York
Post Office Box 7198
100 South Clinton Street
Syracuse, New York, 13261-7198

_____

          [1]    Plaintiff's complaint, which was filed on October 14, 2008, mistakenly named Jo Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change.  See 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Cathrine Bartels, who alleges that she is disabled as a result of a lumbar back condition, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Social Security Commissioner's decision that she was not disabled prior to the termination of her insured status and is therefore ineligible to receive disability insurance benefits ("DIB") under the Social Security Act ("Act"). In support of her challenge, plaintiff maintains that when concluding she was not disabled during the relevant period, the administration law judge ("ALJ") assigned to hear and determine the matter ignored substantial evidence, including from two separate treating sources, indicating her inability to meet the exertional requirements of even sedentary work. Plaintiff argues that had those treating sources and her subjective testimony regarding the limitations she experiences been properly credited, the ALJ would have concluded that she is disabled, and thus seeks a remand of the matter to the agency with a directed finding of disability for the limited purpose of calculating benefits owed.

2

Having carefully reviewed the record in light of plaintiff's arguments, and applied the requisite deferential standard of review, I nonetheless conclude that the ALJ's determination of plaintiff's capabilities, given her medical conditions, which serves as the lynchpin for his finding of no disability, is not supported by substantial evidence. Accordingly, I recommend that plaintiff's motion for judgment on the pleadings be granted, and that the matter be remanded to the agency for further proceedings.

I.    BACKGROUND

Plaintiff was born in March of 1945; at the time of the hearing in this matter she was sixty-three years old. Administrative Transcript at pp. 44, 248.[2]  In September of 1997 plaintiff stood four feet and ten inches in height, and weighed approximately one hundred ninety-five pounds. AT 249. Plaintiff is married, and in 1997 she lived with her husband and a son in Liverpool, New York. AT 250-51. Plaintiff attended school only through the fifth grade and did not receive a general educational development ("GED") certificate. AT 252.

---

[2]    Portions of the administrative transcript which was filed by the Commissioner in this action, Dkt. No. 8, and is comprised principally of the medical records and other evidence before the agency when its decision was made, will hereinafter be cited as "AT _____."

3

Aside from a brief, two-week period of employment at a McDonald's restaurant, plaintiff's work history is limited to various settings in which she served as a home health aide.[3]  AT 72, 252-54.  In that position, which she held during the 1980s, plaintiff cared for elderly patients, bathing them, assisting them in and out of chairs, and cleaning residents' homes. AT 253-54, 263, 266.

According to the plaintiff's hearing testimony, her inability to work stems principally from a chronic lumbar back condition from which she has suffered for several years.  AT 254-55.  Plaintiff traces her back condition to a 1995 incident when she fell on a sidewalk.  AT 148.  Over time, plaintiff has undergone treatment for her back condition from a number of sources, including Dr. Daniel Elstein, an orthopedic surgeon, and from various professionals at the Office of Pain Management, later renamed the New York Pain Center, located in Liverpool, New York, including Dr. Robert Tiso.[4]  Plaintiff was also seen at various times by Dr. Daniel

---

[3]     Plaintiff's recollection regarding her prior employment is somewhat vague, as evidenced by her confusion over whether she worked at McDonald's or Burger King, and whether it was in 1992 or instead sometime during 2001, 2002, or 2004.  *Compare* AT 72 *with* AT 252-53.

[4]     In support of her claim for benefits, plaintiff unsuccessfully attempted to locate additional information regarding her treatment with Dr. Elstein, who apparently burned his records upon retirement.  *See* AT 58, 79, 267.

Rancier, a family practitioner.  *See, e.g.,* AT 81-87.

Treatment of plaintiff's condition by Dr. Elstein, which dates back at least to May of 1996, ultimately led to a laminectomy performed by Dr. Elstein on April 18, 1997, during which the doctor surgically decompressed the first sacral nerve group and foramen between L5 and S1.[5]  AT 146-55.  The pathology report associated with that surgery confirmed a final diagnosis of "[f]ocally degenerated cartilaginous tissue and bone.  Clinical spinal stenosis.  Designated disc L5-S1."  AT 155.

Shortly after her surgery plaintiff again began to experience chronic lumbar pain.  She returned to the pain clinic for a follow-up visit in September of 1997, where she saw Dr. Joseph S. Agnello, Jr.  AT 104.  In his report of that visit Dr. Agnello noted that plaintiff experienced right lumbar paraspinous tenderness for which he prescribed Oxycontin and Percocet.[6]  AT 104.  Plaintiff continued to treat with the pain clinic throughout the balance of 1997, with no material change in either her

---

[5]      A laminectomy is the excision of the posterior arch of a vertebra. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1017 (31st ed. 2007).

[6]      OxyContin is a preparation of oxycodone hydrochloride, the hydrochloric salt of an opioid agonist analgesic derived from morphine.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1377 (31st ed. 2007).  Percocet is a combination preparation of oxycodone hydrochloride–the hydrochloric salt of an opioid agonist analgesic derived from morphine–and acetaminophen.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1377, 1429 (31st ed. 2007).

diagnosis or prescribed medication.  AT 101-03.

Plaintiff's diagnosis remained largely unchanged through the first half of 1998.  In January of 1998, Dr. Ralph W. Firestone, Jr., of the Office of Pain Management, noted that recent lumbar epidural steroid blocks had afforded plaintiff slight relief from her lower back pain, but further reported that the range of motion of plaintiff's cervical spine was decreased, secondary to pain in her head and neck region.  AT 99.  Reports from February and March of 1998 reflect that plaintiff had responded favorably to her medications, including the continued use of Oxycontin and Percocet, although in April of 1998 Dr. Tiso characterized plaintiff's response to treatment as marginal, an observation reiterated by Dr. Stewart J. Rodal, also with the pain clinic, in May, 1998.  AT 95-98.

Records from the pain clinic reveal that plaintiff continued to experience pain through the balance of 1998, with a notation in August of that year that her diagnosis included not only post-laminectomy pain syndrome but also, *inter alia*, lumbar radiculopathy.  AT 88-94.  Plaintiff's prescriptions for Oxycontin and Percocet were continued through that period.  *Id.*

Plaintiff presented at the pain clinic again in May of 1999.  AT 186.

6

On that occasion Dr. Rodal noted that according to the plaintiff, her medications have "been helpful in controlling pain" and complimented her on pain control.  *Id.*  In August of 1999, during a follow up visit for refills of her Oxycontin and Percocet prescriptions, plaintiff denied experiencing any side affects from those medications and stated that she was "quite stable".  AT 183.  Plaintiff was seen at the pain clinic in September of 1999, and again in December of 1999, at which point she reiterated that the medications were helping her and denied suffering from any side effects.[7]  AT 179-82.

The records regarding plaintiff's treatment for her back condition subsequent to 1999 are sparse.  In April of 2001 she presented at the Upstate Medical Anesthesiology Group, Inc. with complaints of "long-standing back pain, right buttock, and right knee pain", requesting additional blocks.  AT 107-08.  Magnetic resonance imaging ("MRI") testing of plaintiff's back in October of 2002 revealed disc degeneration at the L3-4 and L5-S1 levels, with "[m]ild central canal stenosis at the L4-5 level secondary to disc bulge, ligamentous, and facet hypertrophy."  AT

---

[7]     Plaintiff last presented at the New York Pain Center on May 3, 2007, complaining of pain in her lower back, right buttock, and right thigh.  AT 133.  On that occasion plaintiff was diagnosed as suffering from "[l]umbar postlaminectomy syndrome and lumbar spondylosis without myelopathy."  *Id.*

109.

In addition to her lumbar back issue, plaintiff has received treatment for a variety of other conditions including migraine headaches and an abdominal hernia requiring surgical repair in 1998.[8]  She does not, however, urge those conditions as causing or contributing to the limitations upon which she bases her claim that she is unable to perform work-related functions.

II.    PROCEDURAL HISTORY

Plaintiff protectively filed a claim for DIB under the Act on December 14, 2005, alleging that she became unable to work due to a disability as of January 1, 1997.  AT 44-48.  That application was denied based upon an agency determination that plaintiff was not disabled at any time prior to the expiration of her insured status for disability benefit purposes.[9]  AT 36-39.

_____

[8]    In September of 1998, plaintiff underwent surgery to remove an infected "Gore-Tex" patch and to repair her hernia.  AT 234.  In his operative report the surgeon, Dr. B. Sivakumar, noted that plaintiff was in stable condition post-surgery.  *Id.* Plaintiff underwent additional hernial repair surgery in January of 1999.  AT 232-33. Dr. Sivakumar reported that plaintiff tolerated the procedure well.  *Id.*  Plaintiff testified that she required between one-and-a-half and two years to recover from her multiple hernia repairs.  AT 255.

[9]    In August of 1998 plaintiff filed an earlier claim for DIB; that claim was "medically denied" in December of 1998.  AT 36.  The agency was unable to locate the folder developed in connection with that claim, though it appears that the denial was not challenged by the plaintiff.  AT 36.  Plaintiff's second application was initially denied based upon *res judicata*.  AT 13, 36, 40.  That position was reversed, however, based upon an application request filed by the plaintiff on January 10, 2006,

At plaintiff's request a hearing to address her claim for benefits was conducted before ALJ Robert E. Gale on June 3, 2008.  AT 244-69. Following that hearing, on July 23, 2008 ALJ Gale issued a decision in which he found that plaintiff was not disabled from January 1, 1997 through September 30, 1997, when she last met the requirements of her insured status.[10]  AT 10-21.  In his decision ALJ Gale conducted a *de novo* review of the record evidence, applying the now familiar, five step prescribed test for evaluating claims of disability.  At step one the ALJ concluded that plaintiff had not engaged in substantial gainful activity during the relevant time period.  AT 15.  At steps two and three, ALJ Gale found that plaintiff's status as post-lumbar laminectomy sufficiently interfered with her ability to perform basic work activities to be considered severe for step two purposes, but that the impairment did not meet or medically equal any of the listed, presumptively disabling impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically considering but rejecting applicability of Listing 1.04, relating to spine disorders. AT 16-17.

---

and treated as a request for reconsideration.  AT 41.

[10]     There appears to be some discrepancy in the record regarding plaintiff's insured status.  Certain documents in the file identify December 7, 1998 as the date on which plaintiff was last insured for disability benefits.  *See, e.g.* AT 39, 40.

Before proceeding to step four, ALJ Gale conducted a survey of the available evidence and concluded that despite her limitations plaintiff retains the residual functional capacity ("RFC") to perform a full range of light work.[11]  AT 18.  In arriving at his RFC finding, ALJ Gale considered but rejected plaintiff's testimony concerning her limitations as not fully credible, finding that while she suffers from medically determinable impairments that could reasonably be expected to produce the symptoms alleged, her statements were not fully consistent with other evidence in the record.  AT 19-20.  The ALJ also rejected assessments from two treating sources, Dr. Rancier and Dr. Tiso, in which greater limitations

---

[11]    By regulation, light work is defined as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it requires
> a good deal of walking or standing, or when it
> involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To
> be considered capable of performing a full or
> wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine
> that he or she can also do sedentary work,
> unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit
> for long periods of time.

20 C.F.R. § 404.1567(b).

were noted to result from plaintiff's medical condition.  AT 18-19.

Applying his RFC determination at step four, the ALJ concluded that given her limitations plaintiff would be unable to perform her past relevant work as a home health aide.  AT 20.  At step five, the ALJ found that through her last insured date, considering her age, education, work experience, and RFC and applying the medical-vocational guidelines (the "grid") set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P. App. 2, and in particular relying upon rules 202.10 and 202.11 of the grid, the plaintiff was not disabled and is therefore ineligible to receive DIB payments.  AT 21.  The ALJ's decision became a final determination of the agency on September 12, 2008, when the Social Security Administration Appeals Council denied plaintiff's request for review of that opinion.  AT 4-6.

B.    This Action

Having exhausted her administrative remedies, plaintiff commenced this action on October 14, 2008.  Dkt. No. 1.  Issue thereafter was joined on December 6, 2008 by the Commissioner's filing of an answer, Dkt. No. 7, followed by submission of an administrative transcript of the evidence and proceedings before the agency on December 8, 2008.  Dkt. No. 8.  With the filing of plaintiff's brief on December 24, 2008, Dkt. No. 9, and

that on behalf of the Commissioner on December 31, 2009, Dkt. No. 10,

the matter is now ripe for determination, and has been referred to me for

the issuance of a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See*

*also* FED. R. CIV. P. 72(b).[12]

III.    DISCUSSION

    A.    Scope of Review

A court's review of a final decision by the Commissioner under 42

U.S.C. § 405(g) is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

---

[12]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the ALJ has applied the correct legal standards and substantial evidence supports the ALJ's findings, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be " 'more than a mere scintilla' " of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated*

13

*Edison Co.*, 308 U.S. at 229, 59 S.Ct. at 217); *Martone*, 70 F. Supp. 2d at

148 (quoting *Richardson* ).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S.Ct.

456, 464 (1951)).

When a reviewing court concludes that an ALJ has applied incorrect

legal standards, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and*

14

*Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without

remand, while unusual, is appropriate when there is "persuasive proof of

disability" in the record and it would serve no useful purpose to remand

the matter for further proceedings before the agency.  *Parker*, 626 F.2d at

235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d

Cir.1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644

(2d Cir. 1983).

### B.    Disability Determination-The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of
> such severity that he is not only unable to do his previous work
> but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of
> whether such work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

15

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine at step three whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* at §§ 404.1520(d), 416.920(d); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is

16

determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The Evidence In This Case

In her challenge to the Commissioner's determination, plaintiff asserts that the ALJ's RFC finding resulted from the improper rejection of contrary opinions of two of her treating physicians, as well as of her subjective complaints regarding her symptomology, and the record reveals that she is not even capable of meeting the exertional requirements of sedentary work, including those associated with sitting, standing, and walking.

17

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*, daily activities, observations)" to support each conclusion. Social Security Ruling ("S.S.R.") 96-8p, 1996 WL 374184, at *7; *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Additionally,

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

S.S.R. 96-8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004). An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for

a remand.  *See Compo v. Commissioner of Social* Sec.,No. 6:05-CV-973,

2009 WL 2226496, at *9 (N.D.N.Y. July 23, 2009) (Scullin, S.J. and

Treece, M.J.) (citation omitted) ; *Hodge v. Astrue*, No. 07-CV-0162, 2009

WL 1940051, at *10 (N.D.N.Y. July 7, 2009) (McAvoy, S.J.) (citation

omitted).

    To properly ascertain a claimant's RFC, an ALJ must therefore

assess the claimant's exertional capabilities, addressing his or her ability

to sit, stand, walk, lift, carry, push, and pull.  20 C.F.R. §§ 404.1545(b),

404.1569a, 416.945(b), 416.969a.  Nonexertional limitations or

impairments, including impairments resulting in postural and manipulative

limitations, must also be considered.  20 C.F.R. §§ 404.1545(b),

404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).

When making an RFC determination, an ALJ must specify those functions

the claimant is capable of performing; conclusory statements concerning

his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d

at 150 (citing *Ferraris,* 728 F.2d at 588).  An administrative RFC finding

can withstand judicial scrutiny only if there is substantial evidence in the

record to support each requirement listed in the corresponding

regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*,

737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Here, the record contains two statements from medical treating sources expressing opinions regarding plaintiff's functional limitations.  In the first Dr. Daniel Rancier, of St. Joseph's Family Medical, reported in December of 2005 that since January of 1997 the plaintiff has been limited to lifting and/or carrying five to ten pounds, standing and/or walking for less than two hours in an eight hour work day, and with pain can sit for no more than one hour; that medical source statement was copied and signed again on March 10, 2008.  AT 110-13, 135-38.  The second such assessment is from pain management specialist Dr. Tiso, authored in May of 2008, in which he states that from January 5,1996 to the date of his report plaintiff was limited to lifting and/or carrying less than ten pounds occasionally, could stand and/or walk less than two hours in an eight hour work day, and could sit for less than six hours in an eight hour work day, with additional exertional limitations specified.  AT 223-26.  Both of those opinions, which are inconsistent with his light work finding, were essentially rejected by the ALJ when he arrived at his RFC

determination.[13]

Both doctors Rancier and Tiso appear to qualify as treating sources, whose opinions the ALJ rejected.  Ordinarily, the opinion of a treating physician regarding the nature and severity of an impairment is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[14]  Such opinions are not controlling, however, if they are contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362

_____

[13]      Plaintiff's testimony regarding her work-related functions also does not coincide with the ALJ's RFC finding.  Plaintiff testified that dating back to 1997 she could lift only a five or ten pound bag of groceries, and that she could not walk very far and could not stand very long.  AT 257-58.  She later added during her testimony that since her back surgery she could not "walk that much, maybe an hour . . . ."  AT 266.

[14]      The regulation governing treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion. . . .

> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise

in the form of contradictory medical evidence, their resolution is properly

entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

     If the ALJ does not give controlling weight to a treating source's

opinion, he or she must apply several factors to determine what degree of

weight should be assigned to the opinion, including 1) the length of the

treatment relationship and the frequency of examination; 2) the nature and

extent of the treatment relationship; 3) the degree to which the medical

source supported his or her opinion; 4) the degree of consistency between

the opinion and the record as a whole; 5) whether the opinion is given by

a specialist; and 6) other evidence which may be brought to the attention

of the ALJ.  *See* 20 C.F.R. §§ 404.1527, 416.927.  When a treating

physician's opinions are repudiated, the ALJ must provide reasons for the

rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The failure to

apply the appropriate legal standards for considering a treating physician's

opinions constitutes a proper basis for reversal of an ALJ's determination,

as is the ALJ's failure to provide reasons for rejection of his or her

opinions.  *See Johnson*, 817 F.2d at 986; *Barnett*, 13 F. Supp. 2d at 316-

17.

Dr. Rancier, though a family medicine practitioner, based his opinion regarding plaintiff's limitations on the diagnosis of lumbar radiculopathy. AT 110-13.  It is true that according to the records Dr. Rancier apparently treated plaintiff primarily for a lower abdominal hernia, hypertension, headaches, and health maintenance, and it does not appear that he focused upon her chronic back pain.  *See* AT 81-82, 84-85.  In rejecting Dr. Rancier's opinion, however, the ALJ fails to support his conclusory statement that Dr. Rancier's medical assessment is "totally inconsistent with the medical evidence of the record."

The ALJ's rejection of Dr. Tiso's opinions is far more troublesome, given the fact that his office treated the plaintiff's back pain during the relevant time period from at least early 1996, and thereafter throughout that and the ensuing years, including on September 10, 1997, shortly before the plaintiff's insured status expired.  AT 88-106.  Given the lengthy history of treatment of plaintiff's condition by Dr. Tiso and others at the pain clinic, the summary rejection of his opinions regarding her capabilities, particularly in the absence of competent medical evidence to the contrary, was neither proper nor sufficiently explained.

The ALJ's RFC assessment also resulted from his rejection of

plaintiff's subjective pain complaints. An ALJ must take into account subjective complaints of pain in conducting the five step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus* ).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion, the ALJ must consider a variety of factors that ordinarily would be relevant on the issue of credibility in any context, including the claimant's motivation and the medical evidence in the record.  *See Sweatman v. Callahan*, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Sweatman,* 1998 WL 59461, at *5.

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment

24

which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[15]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency, and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject a claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must state the basis for doing so with sufficient particularity to enable a reviewing court to determine

---

[15]     In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

whether those reasons for disbelief were legitimate, and whether the

determination is supported by substantial evidence.  *Martone*, 70 F. Supp.

2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y.

1987)).  Where the ALJ's findings are supported by substantial evidence,

the decision to discount subjective testimony may not be disturbed on

review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588,

591 (2d Cir. 1984).

Plaintiff testified that prior to surgery, her back pain was so intense

that she "didn't want to live."  AT 259.  Plaintiff described her back as

feeling great for at least three days, following her back operation, but

testified that her back pain thereafter returned with even greater intensity.

AT 261.  Plaintiff stated that she has a "hard time walking, standing . . .

[and] bending."  AT 55.  Plaintiff testified that her pain "has taken a bad toll

on [her] life."  AT 263.  She lamented not being able to "do a lot of things

with [her husband]" and felt embarrassed at others' suggestion that she

use a motorized chair in stores.  AT 263-64, 266; *see also* AT 55.   Notes

of treatment by personnel at the Office of Pain Management and New

York Pain Center chronicle the depression caused by plaintiff's constant

pain, on one occasion noting that "[s]he does state that she has thoughts

of suicide but has no intent or plan."  AT 101; *see also* AT 131.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged by her, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were only partially credible to the extent that they are inconsistent with his RFC assessment.  The ALJ noted that the record reflects significant gaps in plaintiff's treatment and that her vocational history was sporadic prior to her alleged disability onset date, which for him "raise[d] a question as to whether the claimant's continuing unemployment is actually due to medical impairments."[16]  AT 20.  The ALJ explained that while plaintiff's condition "has worsened subsequent to her date last insured, there is virtually nothing in the record to demonstrate that her condition would have precluded her from performing a full range of light work prior to her date last insured."  AT 20.  This statement, of course, mischaracterizes the record since it overlooks contrary opinions of two treating sources, as is discussed above.

The ALJ's rejection of plaintiff's subjective pain complaints is

_____

[16]     Relatedly, the ALJ emphasized that in October of 1997, plaintiff requested a tuberculosis booster shot and indicated the potential need for a chest x-ray in order to work at the Rescue Mission.  AT 18; *see* AT 84.

problematic.  Despite concluding that the plaintiff does have a medically determinable impairment which could reasonably be expected to produce the symptoms alleged, the ALJ went on to state that plaintiff's statements regarding her symptoms "are only partially credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below."  AT 20.  Unfortunately, however, the balance of the ALJ's decision fails to illuminate his reasoning for rejecting the subjective pain complaints, and therefore cannot withstand judicial review.

It is fairly evident that plaintiff suffers from some degree of discomfort as a result of her back condition.  The fact that she suffers from discomfort, of course, does not automatically qualify her as disabled, for "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  The extent of plaintiff's pain and its effects upon her ability to perform work-related functions, as she describes them, however, garner considerable support from other evidence in the record.  The ALJ therefore erred in rejecting plaintiff's complaints as being less than credible.

Having concluded that the ALJ's RFC finding is not supported by substantial evidence and was not properly explained, and that his flawed

RFC determination was utilized when the grid was applied to determine the availability of work capable of being performed by the plaintiff, I find that the Commissioner's determination cannot withstand scrutiny, and should be set aside.

     D.    <u>Scope of Remand</u>

     In her appeal, plaintiff seeks a judicial determination that she is disabled, and a remand of the matter to the agency for the sole purpose of calculating benefits owed.  Such a course of action, however, is not appropriate in this case.  Reversal and remand for the calculation of benefits is only warranted "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose."  *Steficek v. Barnhart,* 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72,  83 (2d Cir. 1999)). Remand for further consideration, on the other hand, is justified when the ALJ has applied an improper legal standard, or further findings and explanations would clarify his or her decision.  *See Rosa,* 168 F.3d at 82-83; *Parker,* 626 F.2d at 235; *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).  In this instance, remand is required for the purpose of allowing the ALJ to make further findings and

offer additional explanations of the evidence, including his reasons for having rejected two treating source assessments as well as plaintiff's subjective statements, all of which are contrary to his RFC determination, and not because of a finding that there is persuasive proof of disability in the existing record.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

The record in this case contains only two assessments specifically addressing plaintiff's RFC.  Both of those assessments were prepared by treating sources, and contain opinions regarding plaintiff's capabilities that are squarely at odds with the ALJ's RFC determination.  In arriving at his finding of no disability, the ALJ not only disregarded those opinions, but additionally gave little or no weight to plaintiff's subjective complaints of pain.  Finding that the rejection of those treating source opinions and subjective pain complaints was neither justified nor properly explained, and that the ALJ's RFC determination – a finding pivotal to the conclusion that plaintiff was not disabled at the relevant times – is neither properly explained nor supported by substantial evidence, I conclude that the Commissioner's determination cannot withstand review even under the generous, deferential standard applied in this setting.  Accordingly, it is

hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, and the Commissioner's determination of no disability be VACATED, and the matter be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this report.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      November 2, 2010
            Syracuse, NY